Samir F. Aarab
Caitlin Boland Aarab
BOLAND AARAB PLLP
11 Fifth Street N, Suite 207
Great Falls, MT 59401
Telephone: (406) 315-3737
sfaarab@bolandaarab.com
cbaarab@bolandaarab.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA,
GREAT FALLS DIVISION**

| | |
|---|---|
| THOMAS ANDRIES CRONJE, <br><br> Plaintiff, <br><br> vs. <br><br> MCCABE AGRIBUSINESS INC., and TODD M. MCCABE, <br><br> Defendants. | Cause No. _____ <br><br><br> **COMPLAINT AND DEMAND FOR JURY TRIAL** |

The Plaintiff, Thomas Andries Cronje, through his counsel,

Boland Aarab PLLP, brings this action against his former employer to

recover damages for violation of the Fair Labor Standards Act and other

federal laws and regulations, alleging:

1

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Thomas Andries Cronje ("Cronje"), is a citizen of South Africa.  At all times relevant to this claim, he was a resident of Redstone, Sheridan County, Montana.

2.     Defendant McCabe Agribusiness, Inc. is a Montana corporation with its principal place of business at 216 N Main, Plentywood, Montana 59254. At all times relevant to this action, Defendant's employees were engaged in commerce within the meaning of 29 U.S.C. § 207(a) and as defined in 29 U.S.C. §§ 203(b) and 203(f).

3.     Defendant Todd M. McCabe is a citizen and resident of Sheridan County, Montana.  At all times relevant to this action, Defendant possessed the power to control Cronje during his employment with McCabe Agribusiness, Inc. and is, therefore, as defined in 29 U.S.C. § 203(d), an "employer" subject to personal liability under the FLSA.

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the controversy arises under "the constitution, laws or treaties of the United States."  Specifically, the

claim arises under the Fair Labor Standards Act of 1938, 29 U.S.C.

§§ 201 *et seq.* ("FLSA").

5.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1)

because all defendants are residents of Montana, and under 28 U.S.C.

§ 1391(b)(2) because a substantial part of the events giving rise to these

claims occurred in Sheridan County, Montana.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

6.     An agricultural employer in the United States may import

aliens to perform labor of a temporary nature if the United States

Department of Labor certifies that (1) there are insufficient available

workers within the United States to perform the job, and (2) the

employment of aliens will not adversely affect the wages and working

conditions of similarly-situated United States workers. 8 U.S.C.

§§ 1101(a)(15)(H)(ii)(a) & 1188(a)(1).  Aliens admitted in this fashion

are commonly referred to as "H-2A workers."

7.     Agricultural employers seeking the admission of H-2A

workers must first file a temporary labor certification application with

the United States Department of Labor.  20 C.F.R. § 655.121(a)(1).  This

application must include a job offer, commonly referred to as a "job

order," that clearly describes the job available, the period of employment, the pay rate, and the job expectations.  20 C.F.R.§ 655.121(a)(1).  These job orders also must comply with regulations that establish the minimum benefits, wages, and working conditions that the employer must offer the employee in order to avoid adversely affecting similarly-situated United States workers.  20 C.F.R. §§ 655.0(a)(2), 655.122, 655.135.  Among these terms are assurances by the employer that: (1) workers will be paid wages at least equal to the prevailing hourly wage rate, 20 C.F.R. § 655.122(l); (2) the employer will comply with all applicable federal and state employment-related laws and regulations, 20 C.F.R. § 655.135(e); (3) the employer will provide to the worker, without charge, all tools, supplies, and equipment required to perform the duties assigned, 20 C.F.R. § 655.122(f); and (4) the employer will provide or pay for transportation costs to the place of employment from the worker's home and subsistence en route if the employee completes 50 percent of the work contract period, 20 C.F.R. § 655.122(h)(1).

8.     In the Fall of 2016, Defendants submitted a job order to the Department of Labor's State Workforce Agency.  Defendants were

seeking to employ an "Ag Equipment Operator" from February 15, 2017 to December 15, 2017 to perform duties such as operating and repairing farm machinery at the pay rate of $11.75 per hour, with room provided by Defendants but food to be provided by the employee.  A copy of the job order is attached to this Complaint as Exhibit 1.

9.     The Department of Labor's State Workforce Agency approved Defendants' job order on December 2, 2016.

10.     In October of 2016, Plaintiff Thomas Cronje heard from his friend and fellow South African, George Brink, that a farmer named Todd McCabe in Montana was looking for an H-2A worker who could drive trucks.  Cronje was interested in the position because he had experience driving European-made manual and automatic semitrucks.

11.     While still in South Africa, Cronje spoke to McCabe over the phone about the H-2A position two times during October and November 2016.  McCabe described the position, and Cronje described his experience (including his experience driving European-made but not American-made trucks).  After the second phone call, McCabe offered Cronje the job.

12.     McCabe gave Cronje a brief letter of appointment.  The letter provided that Cronje would be paid the greater of $11.75 per hour or $2,500 per month; that Cronje would receive free room, meals, and board; and that upon completion of half the work period, McCabe would reimburse Cronje for his transportation costs to the farm.  The letter provided no further details about the terms of employment.

13.     In January of 2017, Cronje went to the U.S. consulate to get the appropriate visa. He paid $336 in consulate expenses.

14.     Cronje was admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) to operate and maintain farm equipment and help in any daily routine of harvesting on the farm operated by Defendants in Sheridan County, Montana.

15.     Cronje booked a round-trip plane ticket from Johannesburg, South Africa to Williston, North Dakota at his own expense.  The ticket cost $1,097.  The return flight was scheduled for December of 2017, at the end of a year-long position on Defendants' farm.

16.     Cronje left Johannesburg on February 20, 2017, and arrived in Williston late on the evening of February 21, 2017.

17.     George Brink (who was an employee on a farm neighboring the Defendants') met Cronje at the Williston airport.  Brink took Cronje to WalMart to buy groceries and warm clothes before dropping Cronje off at Defendants' farm.  Cronje arrived at the farm around 4:00 am on February 22, 2017.

18.     Cronje began working on the farm four hours later, around 8:00 am on February 22, 2017.  On that first day, Cronje asked another employee to show him how the gear box worked on an American-made 18-wheeler.  However, Cronje received no instructions from that employee or anyone else.

19.     The next day, Cronje met McCabe for the first time.  McCabe was upset that Cronje was unfamiliar with American gear boxes, and accused Cronje of having lied about his experience.  Cronje responded that he had in fact told McCabe over the phone that he had experience driving only European-made semitrucks. Cronje assured McCabe that he could learn quickly with a little instruction.

20.     On or about February 26, 2017, McCabe angrily approached Cronje again and informed Cronje that he was not productive enough.

McCabe said Cronje had spent all day mending fences, when that task should only have taken four hours.

21.    For the next few days, Cronje performed many tasks on the farm, including feeding cattle, cleaning feeding troughs, fixing fence, cleaning equipment, and driving a tractor, a pickup, and a front-end loader.  However, Cronje never drove or was asked to drive a semi-truck.

22.    On or around March 2, 2017, two more H-2A workers from South Africa arrived on the farm to work.  Cronje did not think there was enough work on the farm to keep all the H-2A workers busy, but he did not share this concern with McCabe.

23.    On the morning of March 6, 2017, McCabe fired Cronje, after only twelve days on the job.  McCabe did not explain why he was firing Cronje, nor did he provide anything about the termination in writing.

24.    Later that same day, a McCabe employee drove Cronje to the nearby farm where Cronje's friend George Brink worked. Cronje spent the night on that farm.

25.    The next day, George Brink drove Cronje to Williston, where Cronje bought a bus ticket to St. Paul, Minnesota.  From there, Cronje

took a bus to Denver, Colorado, and another bus to Colorado Springs. Cronje stayed with a South African couple in Colorado Springs while he figured out how to get home.

26.    After Cronje was fired, he did not have legal status in the United States.  He applied for another H-2A job while in Colorado Springs, but he did not secure the job.

27.    Since he was unable to find legal work, Cronje borrowed $500 from a friend and used that money to pay the fee to change the date on his return ticket to South Africa.  Cronje left the United States on April 15, 2017.

28.    Before Cronje left the farm, the Defendants paid Cronje $869.50 for the 74 hours he had worked from February 22 through February 28, 2017.  The Defendants later paid Cronje $634.50 for the 54 hours of work from February 29 through March 5, 2017 after the Montana Legal Services Association contacted McCabe about not having compensated Cronje for the hours he worked during that period.

29.    To date, the Defendants have not reimbursed Cronje for his consulate fees, his transportation costs, or the costs of obtaining necessary winter work clothes.

9

## COUNT I

## (Violations of the Fair Labor Standards Act)

30.    The allegations of Paragraphs 1–29 are realleged as if fully set forth herein.

31.    The Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, applies to employers employing H-2A workers.  20 C.F.R. § 655.122(h)(1); *Rivera v. Peri*, 735 F.3d 892, 896 (9th Cir. 2013).

32.    The FLSA requires an employer to reimburse a worker for travel and other costs during the worker's first week of work to the extent that not reimbursing the worker would lower the worker's wages for his or her first week of work below the federal minimum wage. 29 U.S.C. §§ 203(m), 206; 29 C.F.R. §§ 531.3(d)(1), 531.35(c), 531.36(b); *Rivera*, 735 F.3d at 898 (quoting Temporary Agricultural Employment of H-2A Aliens in the United States, 75 Fed.Reg. 6884, 6915 (Feb. 12, 2010)).

33.    The federal minimum wage is $7.25 per hour.  29 U.S.C. § 206(a)(1)(C).  Cronje worked 74 hours in his first week at Defendants' farm, and was therefore entitled to compensation of at least $536.50 ($7.25 x 74). He received $869.50 ($11.75 x 74) for his first week's work.

However, Cronje had previously paid costs of at least $1,577.14 for airfare ($1,097), daily travel subsistence (at least $24.14), consulate fees ($336), and winter clothing ($120). After accounting for unreimbursed expenses, Cronje's first week of pay was negative $707.64 ($869.50 - $1,577.14).

34.    The Defendants' failure to reimburse Cronje for the travel and immigration expenses that he incurred primarily for the Defendants' benefit constituted a violation of the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a).

35.    As a consequence of Defendants' FLSA violations, Cronje is entitled to recover his unpaid minimum wages, plus an additional equal amount in liquidated damages, as well as reasonable attorney's fees and costs.  29 U.S.C. § 216(b).

## COUNT II

### (Violation of the prevailing hourly wage requirement)

36.    The allegations of Paragraphs 1–29 are realleged as if fully set forth herein.

37.    Employers are required to pay H-2A workers at least the prevailing hourly wage rate, which is the hourly wage determined by

the Department of Labor's State Workforce Agency to be prevailing in

the area in accordance with State-based wage surveys.  20 C.F.R.

§ 655.122(l).  The job order McCabe submitted to the Department of

Labor's State Workforce Agency acknowledges this minimum rate of

pay requirement.

38.    The prevailing hourly wage rate for Agricultural Equipment

Operators (Occupational Code 45-2091) in Sheridan County, Montana is

$21.51.[1]

39.    In the two weeks he worked for the Defendants, Cronje

worked 128 hours.  He was therefore entitled to compensation of

$2,753.28 ($21.51 x 128).  Cronje received only $1,504 from the

Defendants ($11.75 x 128).

40.    Defendants' failure to pay Cronje the prevailing hourly wage

rate for Agricultural Equipment Operators in Sheridan County,

Montana constituted a violation of the requirements of 20 C.F.R.

§ 655.122(l).

---

[1] *See* http://www.flcdatacenter.com/ OesQuickResults.aspx?code =45-
2091&area=3000001&year=17&source=1.

41.     As a consequence of Defendants' prevailing hourly wage rate violations, Cronje is entitled to recover $1,249.28.

## COUNT III

### (Breach of Contract)

42.     The allegations of Paragraphs 1–29 are realleged as if fully set forth herein.

43.     The work contract for an H-2A worker must contain all of the provisions required by 20 C.F.R. Part 655, Subpart B (Labor Certification Process for Temporary Agricultural Employment in the United States (H-2A Workers). In the absence of a separate, written work contract entered into between the employer and the worker, the required terms of the job order are the work contract. 20 C.F.R. § 655.122(q).

44.     Defendants breached Cronje's work contract (the job order) in the following ways: Defendants paid Cronje at a rate below the prevailing hourly wage rate; Defendants failed to provide employment that complied with all applicable federal employment-related laws and regulations; Defendants failed to provide or pay for Cronje's transportation to the place of employment; and Defendants failed to

13

provide all tools, supplies, and equipment required for Cronje to perform his assigned duties.

45.    As a consequence of Defendants' breach of Cronje's work contract, Cronje is entitled to all his actual, consequential, and incidental damages.

46.    Unless an H-2A worker is fired for cause, employers are required to provide H-2A workers with employment opportunities for at least three-quarters of the number of hours in the job order or to pay for any shortfall, 20 C.F.R. § 655.122(i), (n); housing at no cost for the duration of the job order, 20 C.F.R. § 655.122(d), (i)(5); and transportation and daily subsistence from the place of employment, 20 C.F.R. § 655.122(h)(2).

47.    Cronje was not fired for cause because he did not "(a) refuse[ ] without justified cause to perform work for which the worker was recruited and hired; (b) commit[ ] serious acts of misconduct; or (c) fail[ ], after completing any training or break-in period, to reach production standards when production standards are applicable." *See* Exhibit 1.

48.     The job order entitled Cronje to 48 hours of work per week from February 15, 2017, through December 15, 2017.  At the hourly wage of $11.75, the value of the job order to Cronje was $24,252.00.  However, at the proper prevailing hourly wage rate of $21.51, Cronje should have been entitled to $44,396.64.  Three-quarters of the number of hours in the job offer is 1,548 hours, which equals $18,189 at $11.75 per hour, or $33,297.48 at $21.51 per hour.

49.     Defendants' failure to compensate Cronje for three-quarters of the number of hours in the job order when Cronje was not fired for cause constitutes a violation of the requirements of 20 C.F.R. § 655.122(i) and a breach of the work contract.

50.     As a consequence of Defendants' three-quarters guarantee violations, Cronje is entitled to recover $34,846.20.

51.     The job order stated that the Defendants would provide Cronje with housing but not meals from February 15, 2017, through December 15, 2017.  The Defendants only provided Cronje with housing from February 22, 2017 to March 5, 2017.  Cronje is therefore owed rental costs incurred since his departure from the Defendants' farm.

52.   After he left the Defendants' farm, Cronje rented a home for $425 per month in South Africa. He spent approximately $3,187.50 in rent costs through December 15, 2017, costs he would not have incurred had he remained employed by the Defendants.

53.   Defendants' failure to provide Cronje with housing through December 15, 2017, when Cronje was not fired for cause, constitutes a violation of the requirements of 20 C.F.R. § 655.122(d) and a breach of the work contract.

54.   As a consequence of Defendants' housing guarantee violation, Cronje is entitled to recover $3,187.50.

55.   After he was terminated without cause, Cronje spent $302 on bus fare from the Defendants' farm to Colorado Springs, and $500 to change the date on his return ticket to South Africa.

56.   Defendants' failure to reimburse Cronje for transportation and daily subsistence from the place of employment when Cronje was not fired for cause constitutes a violation of the requirements of 20 C.F.R. § 655.122(h)(2) and a breach of the work contract.

57.   As a consequence of Defendants' transportation guarantee violation, Cronje is entitled to recover $802.

16

## **PRAYER FOR RELIEF**

Wherefore, Cronje respectfully requests judgment:

1.     Against the Defendants on all the claims set forth in this Complaint;

2.     Awarding Cronje his actual, consequential, incidental, and liquidated damages;

3.     Awarding Cronje reasonable costs, attorney fees, and interest as allowed by law;

4.     Granting such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Cronje demands a trial by jury on all claims and issues in this case.

DATED this 13th day of November, 2018.

By:   BOLAND AARAB PLLP

/s/ *Samir F. Aarab*
Samir F. Aarab
Caitlin Boland Aarab
BOLAND AARAB PLLP
11 5th Street N, Suite 207
Great Falls, MT 59401
*Attorneys for Plaintiff*

17